IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM Y. TREVILLION, | No. C 05-02852 SBA |
|     Plaintiff, | |
| v. | **ORDER** |
| DEBORAH TARANTINO, ET AL., | |
|     Defendant. | |

This matter comes before the Court on Plaintiff Kim Trevillion's ("Plaintiff") application to proceed *in forma pauperis* ("IFP") and complaint. Having read and considered the papers submitted by Plaintiff, and being fully informed, the Court hereby DENIES WITHOUT PREJUDICE Plaintiff's IFP Application and DISMISSES Plaintiff's complaint WITHOUT PREJUDICE.

**BACKGROUND**

**A.   Factual Background**[1]

Plaintiff was employed by the United States Department of Agriculture as a part time Office Automation Clerk in the Redwood Sciences Laboratory. Complaint at Exhibit A. In a letter dated March 25, 2005 ("March 2005 Letter"), she was informed that her employment would be terminated within seven calendar days from the date of the letter unless she brought her performance up to a satisfactory level. Id.

According to the March 2005 Letter, Plaintiff had been hired to perform the following duties: serving as a Laboratory receptionist, greeting office visitors, answering the telephone, providing routine information and referring inquiries to the appropriate person, as well as other clerical duties. Id.

---

[1] The following facts are taken from Plaintiff's complaint.

1  Additionally, Dr. Lee ("Lee") and Deborah Tarantino ("Tarantino"), Plaintiff's supervisors, highlighted
2  the importance of fostering and maintaining positive working relations with others since her primary
3  assignment depended upon other employees finding her approachable, competent, and willing to help.
4  Id.

5  The March 2005 Letter indicated that Plaintiff's interactions with other employees and visitors
6  had been negative. Id. For example, on October 12, 2004, Plaintiff sent an email to Lee complaining
7  that ten different employees displayed racial prejudices and treated her with rudeness and hostility. Id.
8  Lee discussed the alleged incidents with Plaintiff, found no evidence to support her assertions, and
9  suggested that perhaps she had misinterpreted the employees' behavior. Id.

10  Lee recommended that she be more open and accepting of other employees. Id. Plaintiff,
11  however, continued to send him email messages regarding what she perceived to be negative
12  interactions with employees, including an allegation that two of her colleagues had tampered with her
13  vehicle and accosted her in the parking lot. Id. Again, no evidence of tampering or threatening behavior
14  was discovered. Id.

15  Additionally, the March 2005 Letter described Plaintiff's response to an individual who inquired
16  whether there was a frisbee range in the building. Id. In an email dated February 15, 2005, Plaintiff
17  stated, "I was startled and interrupted from my duties by a Caucasian male intruder." Id. Plaintiff
18  described his physical characteristics and stated "when intruder was told there was no Frisbee range in
19  the building, intruder who had entered from the back of the building, sarcastically stated, 'sorry to bother
20  you'." Id.

21  The March 2005 Letter further indicated that on March 17, 2005, Plaintiff complained that she
22  had received "annoying" telephone calls when upon answering the telephone she would only hear
23  beeping sounds and that such calls interrupted her from performing her duties. Id. Plaintiff was
24  informed that it was not unusual to accidently receive calls from individuals intending to send a fax who
25  simply dialed the wrong number. Id. She was told that although such calls are "annoying," it could not
26  be helped since her job was to answer the telephone. Id.

27
28

In addition to informing Plaintiff that she had seven calendar days to bring her performance to a satisfactory level, the March 2005 Letter provided that failure to maintain satisfactory performance would result in her immediate termination without further notice. Id.

Plaintiff was not terminated seven days later. On May 9, 2005, however, Plaintiff sent a letter to her supervisor Tarantino claiming that her calls were being illegally recorded. See June 9, 2005 Letter[2]. Tarantino responded, in a letter dated June 9, 2005 stating, "I want to assure you that your telephone calls are not being recorded" and "this office has no authorization for recording anyone's telephone conversations nor have we asked for any authorization." Id.

Still, Plaintiff sent a letter to the Office of the Inspector General of the United States Department of Agriculture, dated June 10, 2005, in which she alleged that her calls were being illegally recorded at her workplace. See June 10, 2005 Letter[3]. She stated that every 15 seconds she distinctly heard a beep tone when she answered the telephone. Id. Further, she claimed that she had been "telephonically harassed" at her residence by her supervisor who "left a false and malicious message on her answering machine" claiming that Plaintiff had not reported to work and had not called in. Id. Plaintiff stated, "a trap has been installed on my residential line." Id.

Plaintiff also sent a letter dated May 17, 2005 to the United States Marshals Service in which she claimed that she had been stalked and intimidated by a Caucasian female who had parked near her residence and watched her when she returned from work. See May 17, 2005 Letter[4]. She stated, "this female has a cell phone and she has been observed slouched down in the passenger side of the vehicle." Id. Plaintiff provided the license plate number of the vehicle and noted that she had already alerted the Arcata Police Department. Id. Additionally, Plaintiff stated that she "had been subjected to harms such as stalking, telephone harassment, and illegal telephone recordings at the Redwood Sciences Lab and

---

[2] This letter is being referred to as the "June 9, 2005" letter because Plaintiff has not assigned it an Exhibit number but has nonetheless attached it to her complaint.

[3] This letter is being referred to as the June 10, 2005 Letter. see FN2.

[4] This letter is being referred to as the May 17, 2005 Letter. see FN2.

3

1  at [her] residence." Id. She alleged that her supervisors, Tarantino and Lee, were responsible for these
2  illegal activities and called for an investigation. Id.

3       The United States Marshals Service responded to Plaintiff's letter by informing her that their
4  office "does not have the authority for conducting investigations of this type." See May 9, 2005 Letter[5].

5       In a letter dated June 27, 2005 ("June 2005 Letter"), Plaintiff was informed that her part time
6  employment with the Redwood Sciences Laboratory was terminated. Complaint at Exhibit C. The June
7  2005 Letter indicated that her supervisor had received several verbal complaints about her rude behavior
8  toward fellow employees and customers. Id.

9  **B.    Procedural Background**

10       On July 13, 2005, Plaintiff filed a *pro se* complaint along with an IFP application in this
11  Court against her supervisors, Lee and Tarantino, as well as specific employees with whom she
12  interacted. Complaint at ¶ 3. Plaintiff claims that "all defendants solicited others, met and conspired
13  secretly, and manufactured slanderous and libelous documentation to terminate [Plaintiff] from her
14  position because she was the only African American female employed in the laboratory." Id. at ¶ 7.
15  She further claims that the Redwood Sciences laboratory "openly discriminated against [her] when
16  she refused to engage in lesbian activities with a co-worker," and that the laboratory "employs
17  lesbians who engages [sic] in sexual misconduct with new employees." Id. Accordingly, Plaintiff
18  describes the nature of her claim as "an action of assault[6], slander and libel and violation of Title VII
19  . . ." Id. at ¶ 1.

20                  **LEGAL STANDARD**

21       Federal courts must review a case filed *in forma pauperis* prior to service of process. 28
22  U.S.C. § 1915(e). An *in forma pauperis* complaint shall be dismissed if the allegation of poverty is
23  not true, or if the court determines that the action is frivolous or malicious, fails to state a claim on

---

[5] This letter is being referred to as the May 9, 2005 Letter. see FN2.

[6] Although Plaintiff claims she was assaulted, she has provided no facts supporting an assault claim and failed to include assault in any of her claims for relief.

United States District Court / For the Northern District of California

which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

*Pro se* pleadings must be liberally construed.  <u>Balisteri v. Pacifica Police Depot</u>, 901 F.2d 696, 699 (9th Cir. 1988).  However, when reviewing a complaint, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  <u>See</u> <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979 (9th Cir. 2001); <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988) ("conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim").  Leave to amend is properly denied "where the amendment would be futile." <u>DeSoto v. Yellow Freight Sys.</u>, 957 F.2d 655, 659 (9th Cir. 1992).  If a plaintiff's complaint is found to be deficient and an amendment could possibly cure the deficiency, the complaint must be dismissed with leave to amend.  <u>See</u> <u>Eldridge v. Block</u>, 832 F.2d 1132, 1135-37 (9th Cir. 1987).

## DISCUSSION

### I.    The IFP Application

The benefit of proceeding *in forma pauperis* is a privilege, not a right.  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1231 (9th Cir. 1984).  Thus, to obtain this privilege, a plaintiff must demonstrate, to the Court's satisfaction, her inability to pay the requisite fees and costs.  <u>Williams v. Marshall</u>, 795 F. Supp. 978, 979 (N.D. Cal. 1992).  The facts concerning her poverty must be stated with some "particularity, definiteness and certainty."  <u>United States v. McQuade</u>, 647 F.2d 938, 940 (9th Cir. 1981).  The Court has discretion to make a factual inquiry into the plaintiff's financial status and to deny her request to proceed *in forma pauperis* where she is unable or unwillling to verify her poverty. <u>Id.</u>  If the Court determines that a plaintiff's allegation of poverty is untrue, it shall dismiss the case. 28 U.S.C. § 1915(e)(2)(A).

In her IFP application, Plaintiff states that she is unemployed and has no income.  <u>See</u> IFP App. ¶ 1.  Plaintiff does not receive any federal or state public assistance.  <u>Id.</u> ¶ 2.  Although she currently has $206 in her checking account, Plaintiff's monthly expenses include $475 for rent and

5

1  $100 for food. Id. ¶ 8. Plaintiff alleges that she has no other debt. Id. ¶ 9.

2  Based on the information in her IFP application, Plaintiff appears to have no job, no income, and no assets, yet her monthly expenses total $575. It is not clear to this Court how Plaintiff manages to meet her monthly obligations of food and rent in light of her lack of employment and income. Though Plaintiff specified she owns $206 in cash, that amount is insufficient to cover even one month's worth of expenses. Given this apparent inconsistency between Plaintiff's regular expenses and her means to pay for those expenses, the Court cannot properly determine whether Plaintiff's allegations of poverty are true. Consequently, this Court DENIES WITHOUT PREJUDICE Plaintiff's IFP application to permit the Plaintiff an opportunity to file a more complete IFP Application that addresses the concern raised by the Court above.

## II.     Plaintiff's Complaint

Plaintiff alleges a federal cause of action against Defendants for violations of 42 U.S.C. §§ 2000e-2(a) and 2000e-16. Though it is not entirely clear from her complaint, Plaintiff also attempts to join her state law slander and libel claims.

### A.     Title VII: Gender and Race Discrimination[7].

As a preliminary matter, Title VII claims are asserted against employers. 42 U.S.C. section 2000e. Plaintiff has not brought the present lawsuit against the Redwood Sciences Laboratory, but rather, initiated an action against her individual supervisors and colleagues.

For Title VII purposes, 42 U.S.C. section 2000e provides that the term employer "means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." According to the Supreme Court, "Congress' decision to define "employer" to include an "agent" of an employer evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." Meritor Savings Bank v. Vinson,

---

[7] In her third claim for relief, Plaintiff alleges that Defendants discriminated against her on the basis of national origin. Plaintiff has not provided *any* factual support for this claim. The Court notes elsewhere in her complaint, Plaintiff erroneously referred to her race, African-American, as her national origin. Complaint at ¶ 2. It is not clear to the court whether Plaintiff intended to allege race discrimination and mistakenly pled her claim as national origin discrimination. If Plaintiff intended to allege race discrimination, she must properly plead so, consistent with the concerns raised by the Court herein.

477 U.S. 57, 58 (1986).

In <u>Burlington Industries v. Ellerth</u>, the Supreme Court held that an employer was subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the employee. 524 U.S. 742, 762 (1998). The Court determined that "a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." <u>Id.</u>

As a general proposition, however, "only a supervisor, or other person acting with the authority of the company, can cause this sort of injury." <u>Id.</u> While "a co-worker can break a co-worker's arm as easily as a supervisor, and anyone who has regular contact with an employee can inflict psychological injuries by his or her offensive conduct," a co-worker "cannot dock another's pay, nor can one co-worker demote another." <u>Id.</u>

Accordingly, the Court will analyze Plaintiff's Title VII claims against her supervisors only and disregard her allegations with respect to fellow employees.

### 1. Legal Standard

Plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of gender discrimination. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). In order to establish a *prima facie* case of discrimination, plaintiff must show (1) membership in a protected class, (2) that she was competently performing in her position, (3) that she suffered an adverse employment action, and (4) that circumstances suggest a discriminatory motive. <u>See</u> <u>Guz v. Bechtel National, Inc.</u>, 24 Cal. 4th 317, 355 (2000); <u>see also</u> <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).[8] The *prima facie* case functions to eliminate "at the outset the most patently meritless claims, as where plaintiff is not a member of the protected class or was clearly unqualified." <u>Id.</u> at 354 (citing <u>Burdine</u>, 450 U.S. at 253).

Once a Plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to

---

[8] The formulation presently applied is a modification of the <u>McDonnell Douglas</u> test applied by the California Supreme Court in <u>Guz</u>, 24 Cal. 4th at 355. This modification is appropriate to accommodate the facts in this case, which alleges gender motivated termination rather than a failure to hire like in <u>McDonnell Douglas</u>. <u>See McDonnell Douglas</u>, 411 U.S. at 802 n.13 (noting test should be modified to fit the facts of each case).

7

articulate nondiscriminatory reasons for the allegedly discriminatory conduct." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

If the Defendant articulates a non-discriminatory reason, the burden shifts back to the Plaintiff to demonstrate that the non-discriminatory reason offered by the Defendant was a pretext for discrimination. Godwin, 150 F.3d at 1220. There are two methods for establishing this: the Plaintiff can offer either direct or circumstantial evidence of discriminatory motive. Id. at 1221.

### 2.     Analysis

Plaintiff has made a showing that as an African American and female, she is a member of a protected class. She was subjected to an adverse employment action when her employment was terminated. There is evidence, however, that Plaintiff was not performing her job competently.

On several occasions Plaintiff was informed that her job demanded that she foster and maintain positive working relationships with her colleagues. Complaint at Exhibit A. The March 2005 Letter indicated, however, that of the approximately 35-40 employees working out of the Redwood Sciences Laboratory, Plaintiff had complained about her interactions with at least 18 employees. Id. Additionally, Plaintiff's supervisors received complaints from customers and employees based on her "rude demeanor to visitors and telephone callers." Complaint at Exhibit C. The March 2005 Letter notified Plaintiff of her failure to perform satisfactorily and provided her with an opportunity to improve her performance such that she would avoid termination of her employment. When Plaintiff failed to perform satisfactorily, however, her employment was terminated.

Other than her membership in a protected class, Plaintiff has failed to allege any additional facts which would meet her *prima facie* burden of proving gender discrimination on the part of her former employer. Namely, Plaintiff has not pled facts supporting the contention that she was performing competently, or the nature and any details referring thereto of the adverse employment actions she suffered as a result, other than the termination. Accordingly, Plaintiff's claim appears to

lack merit.

**B.     Retaliation**

Plaintiff also alleges that her involvement in protected activities led to retaliatory behavior by the Defendants. Complaint at ¶ 21.

**1.     Legal Standard**

In order to establish a *prima facie* case of retaliation, Plaintiff must show that "she engaged in a protected activity, that she was thereafter subjected to an adverse employment action by her employer, and there was a causal link between the two." Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984). Plaintiffs who have opposed any unlawful employment practice under Title VII engage in protected activities. EEOC v. Dinuba Medical Clinic, 222 F.3d 580, 586 (9th Cir. 2000). As long as a plaintiff reasonably believed that Title VII forbade the employment actions she opposed, she receives opposition clause protection. EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1014 (9th Cir. 1983).

**2.     Analysis**

Here, Plaintiff claims that her membership in the "National [sic] Advancement for Colored People" ("NAACP") and the USDA Coalition for Minorities was a protected activity. Complaint at ¶ 20. According to Plaintiff, her membership in such groups subjected her to numerous adverse actions including Defendants denying her of numerous promotions, monitoring her work performance, denying her training opportunities, illegally recording her telephone calls in the workplace, tampering with her official time and attendance records for various pay periods, and releasing unknown chemicals in the workplace to cause Plaintiff to suffer repeated illnesses. Id. at ¶ 21. Additionally, Plaintiff alleges that on July 1, 2005, Defendants solicited her property manager and the Landlord's Eviction Service "to tape an eviction notice on Plaintiff's apartment and subsequently mailed three similar notices with the intent to harass Plaintiff." Id.

Plaintiff's membership in the NAACP and the USDA Coalition for Minorities does not

9

constitute involvement in a protected activity. An employee engages in a protected activity when she opposes "any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). Plaintiff has not alleged that her employer banned such membership, nor has she intimated that she became involved with the NAACP and the USDA Coalition for Minorities to oppose an unlawful employment practice or policy in operation at the Redwood Sciences Laboratory. Accordingly, Plaintiff has not shown that her membership constituted involvement in a protected activity.

Moreover, there is also no evidence to suggest that Plaintiff was subjected to such egregious actions by her employer. She has not indicated which promotions she applied for that were subsequently denied. She has not specified the training she was denied. Her claims regarding the illegal recordings of her telephone calls were denied by her supervisors. She has not provided the date of the chemical releases, who released the chemicals, or the sicknesses she suffered as a result. No other employee has corroborated the release of such chemicals in the workplace or complained of sicknesses as a result.

Finally, Plaintiff has not shown a nexus between her membership and the alleged adverse employment actions she claims to have suffered. She has not indicated that her employer and colleagues were even aware of her membership in the NAACP and USDA Coalition for Minorities. Accordingly, Plaintiff's allegations of retaliation appear to lack merit.

### C. State Law Libel and Slander Claims

Since Plaintiff was unable to make out a *prima facie* Title VII and Retaliation claim, she lacks a federal cause of action over which this Court would possess original jurisdiction. Thus, her state law claims may not be joined under supplemental jurisdiction. Accordingly, this Court lacks jurisdiction over Plaintiff's state law claims.

### CONCLUSION

IT IS HEREBY ORDERED THAT Plaintiff's IFP application is DENIED WITHOUT PREJUDICE and Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. **If Plaintiff chooses to file another IFP application she must do so consistent with the concerns raised by**

10

**this Court above.  Additionally, if Plaintiff chooses to file an amended complaint, she must allege, in good faith, facts - not merely conclusions of law - that demonstrate that she is entitled to relief under the applicable federal statutes.  Plaintiff may not, for example, allege in summary fashion that she was discriminated against because she was denied promotions; rather, she must allege not only that the denials occurred, but also offer facts that establish that the denial violated federal law.  Plaintiff must allege facts that demonstrate she was performing her job competently and that others similarly situated were treated differently on the basis of their sex and/or race.  If Plaintiff chooses to do so, she must file an amended complaint within thirty (30) days of the date of this order.  Plaintiff is expressly warned that failure to file an amended complaint that complies with this Order within the allotted time period shall constitute sufficient grounds to support a finding that further leave to amend would be futile, and Plaintiff's complaint will be dismissed with prejudice.**

Date: August 22, 2005

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge